IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| RICHARD BARTON, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR, *et al.*,<br><br>*Defendants*. | Civil Action No. 5:24-cv-00249<br><br>**MEMORANDUM IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANTS' MOTION FOR PERMISSIVE INTERVENTION**<br><br>**OR**<br><br><u>**CONDITIONAL**</u> **MOTION FOR INTERVENTION AS OF RIGHT AND TO PARTICIPATE AS AMICI** |

      This Court should grant Odin Millard, Dexter Starks, Willie Shelly, Farmworker Justice, Legal Action of Wisconsin, and the UFW Foundation (together, "Proposed Intervenor-Defendants") permissive intervention in this matter to defend a regulation that affords vital protections to Proposed Intervenor-Defendants or their clients. Permissive intervention is warranted because this Motion is timely, Proposed Intervenor-Defendants have defenses that share a common question of law or fact with the main action, and intervention will neither unduly delay nor prejudice the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1), (b)(1)(B), (b)(3). Recognizing the importance of including groups and individuals like Proposed Intervenor-Defendants in challenges to the H-2A program, federal courts have previously granted permissive intervention in similar cases. *See, e.g.*, *N. C. Growers Ass'n, Inc. v. Solis*, No. 1:09-cv-411, 2009 WL 4729113 (M.D.N.C. Dec. 3, 2009).

      Should this Court disagree that permissive intervention is warranted, Proposed Intervenor-Defendants request that this Court treat their motion as "a standby or conditional

1

application for leave to intervene" as of right "and ask [this Court] to defer consideration" of whether Proposed Intervenor-Defendants are entitled to such relief until it is clear the Government Defendants do not adequately represent their interests in this litigation. *See Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996) ("*SWANCC*"). While Proposed Intervenor-Defendants have made a "timely motion," *see* Fed. R. Civ. P. 24(a), deferring consideration until the inadequacy of the Government Defendants' representation of Proposed Intervenor-Defendants' interests is unmistakable — such as if, in the future, the Government Defendants cease to defend the Final Rule — will conserve judicial resources.

Finally, should this Court deny permissive intervention and treat this Motion as a standby or conditional motion pursuant to *SWANCC*, Proposed Intervenor-Defendants request that this Court grant leave to file and docket the attached Proposed Oppositions to the pending motions for preliminary relief as *amici* briefs supporting the Government Defendants.[1]

---

[1] Article III standing is no barrier to Proposed Intervenors' participation at this stage. First, "[a]n intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Assoc. Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994); *see also Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005); *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). Second, the Government Defendants plainly have standing to defend the Final Rule. *See Diamond v. Charles*, 476 U.S. 54, 62 (1986) (noting that a government "has standing to defend the [legality] of its [laws]"). Proposed Intervenors currently seek the same relief as the Government Defendants–a dispositive ruling that leaves the Final Rule untouched–so they can piggyback on the current Defendants' standing. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (explaining that the rule that "[a]t least one [party] must have standing to seek each form of relief . . . applies to intervenors of right"). Third, at least one of the Proposed Intervenors has Article III standing in their own right. Should this Court conclude that further inquiry into the Proposed Intervenors' standing is necessary, Proposed Intervenors will provide more fulsome briefing on the issue at that time.

## I. BACKGROUND

### A. *This Litigation*

Plaintiffs filed their Complaint on September 16, 2024. ECF No. 1. The Complaint alleges that the Final Rule, *see* Improving Protections for Workers in Temporary Agricultural Employment in the United States, 89 Fed. Reg. 33,898 (Apr. 29, 2024), violates the Administrative Procedure Act, *see* 5 U.S.C. §§ 701–06, the Paperwork Reduction Act, *see* 44 U.S.C. § 3507, and the Fifth and Fourteenth Amendments to the U.S. Constitution, *see* U.S. Const. amend. V, XIV.

Four States moved to intervene as plaintiffs. *See* States' Mot. to Intervene, ECF No. 11. The Court granted that motion. *See* Mem. Order, ECF No. 14. The State Plaintiffs allege the Final Rule violates the APA, *see* 5 U.S.C. §§ 701–06, and the anti-commandeering doctrine. *See* Interv.-Pls.' Compl., ECF No. 15.

On October 15, 2024, the State Plaintiff-Intervenors moved for a preliminary injunction and a stay pursuant to 5 U.S.C. § 705. *See* Mot., ECF No. 17. The original Plaintiffs filed their own motion for preliminary relief on October 17, 2024. *See* Mot., ECF No. 21. A hearing is set on the motions for November 4, 2024. *See* Orders, ECF Nos. 20, 22.

### B. *Proposed Intervenor-Defendants*

The Proposed Intervenors are a farmworker on an H-2A visa, farmworkers in corresponding employment, a legal service provider, and two other farmworker advocacy organizations. Each Proposed Intervenor's interests are directly threatened by the Plaintiffs' challenge to the Final Rule.

Odin Millard is a farmworker from South Africa who has worked on an H-2A visa in Tennessee, North Dakota, and Kansas over the past three years. Millard Decl. ¶ 1 (Ex. 1). He

3

currently works in Kansas, and intends to return to Kansas on an H-2A visa next year and in following years. *Id.* ¶¶ 2–3. He benefits from the protections afforded by the Final Rule. For example, in a prior job, his "H-2A employer confiscated [his] passport and other immigration documents, preventing [him] from leaving." *Id.* ¶ 4. The Final Rule prevents Mr. Millard's current and future H-2A employers from doing so. *See* 20 C.F.R. § 655.135(o). He further benefits from the Final Rule's "provision on progressive discipline," which will "help make sure that H-2A workers like [him] get fair notice and a chance to remedy anything [they] are doing wrong." Millard Decl. ¶ 5; 20 C.F.R. § 655.122(n)(2)(i)(E). And the sections of the Final Rule making it harder for debarred employers to use successors in interest to circumvent the H-2A program's regulations are also "helpful [to him], because H-2A workers . . . don't always know which employers have violated employment laws." Millard Decl. ¶ 6; 20 C.F.R. § 655.104.

Dexter Starks is a U.S. citizen and has worked as a farmworker in Mississippi for over 15 years. Starks Decl. ¶ 1 (Ex. 2). Over "the last several years, [his] employer has also employed H-2A workers to do the same work as the U.S. farmworkers like [him]." *Id.* ¶ 2. As a U.S. worker in corresponding employment, he thus receives the same wages and benefits as his coworkers on H-2A visas. *Id.* ¶ 3. Mr. Starks benefits directly from the Final Rule. For example, "the provisions about termination and progressive discipline help make sure that U.S. workers like [him] get warnings before the employer can terminate [them for cause] and give [them] a chance to fix things." *Id.* ¶ 4. "The Final Rule also makes clear that [he] can only be fired [for cause] for certain reasons, and they can't just fire [him] so they can replace [him] with H-2A workers." *Id.* Mr. Starks also benefits financially because the Final Rule "moves up the date of the increase in the Adverse Effect Wage Rate (AEWR)," which means his pay will increase sooner than it would without the Final Rule. *Id.* ¶ 5.

4

Willie Shelly is a U.S. citizen and works "at a farm in Mississippi that also employs H-2A workers to do the same work as" he does. Shelly Decl. ¶¶ 1–2 (Ex. 3). He "intend[s] to keep working on this farm for as long as they'll keep hiring" him. *Id.* ¶ 2 Mr. Shelly is in corresponding employment, so his "employer must provide [him] and the other U.S. workers at the farm the same wages and benefits as the H-2A workers." *Id.* ¶ 3. "The 2024 H-2A Final Rule will help [Mr. Shelly] and [his] fellow U.S. workers." *Id.* ¶ 4. Mr. Shelly has "seen many U.S. farmworkers get replaced by H-2A workers." *Id.* He believes that the Final Rule's for-cause termination and progressive discipline provisions "will be very beneficial to [him] and [his] fellow U.S. workers to make sure [they] can keep [their] jobs and livelihoods" rather than being arbitrarily fired and replaced with H-2A workers. *Id.*

Farmworker Justice "is a national non-profit organization that serves farmworkers, their families, and their communities across the United States to improve living and working conditions, immigration status, health, occupational safety, and access to justice." Johnson Decl. ¶ 2 (Ex. 4). The organization "took a leadership role among 40 signatories in organizing and preparing extensive comments on the 2023 Proposed H-2A Rule." *Id.* ¶ 3. Farmworker Justice has long "represent[ed] farmworkers with H-2A visas who brought claims involving their H-2A contract and retaliation for asserting workplace rights, or who were not paid their rightful wage, had their passports confiscated by their employer, or sought better protections in having visitors of their choosing at their housing." *Id.* ¶ 4. It has "produced training materials related to the Final Rule, and has conducted trainings [on the Final Rule] including a webinar for advocates around the nation." *Id.* ¶ 5. Farmworker Justice has "limited resources. Striking down the Final Rule would limit the U.S. Department of Labor's ability to debar bad actors, whose repeat bad acts

would result in an added strain on the limited available legal resources available to . . . Farmworker Justice." *Id.* ¶ 6.

Legal Action of Wisconsin "is the largest non-profit law firm in Wisconsin." Sullivan Decl. ¶ 2 (Ex. 5). Through its "statewide Farmworker Project, Legal Action's farmworker advocates ensure that agricultural workers, including workers with H-2A visas and those in corresponding employment, receive the wages they have earned, live and work in a safe environment, are recruited lawfully and fairly, and have access to the public benefits to which they are entitled." *Id.* Legal Action has "repeatedly used the existing H-2A regulations as a core advocacy tool." *Id.* ¶ 3. They "have represented H-2A workers in cases of wage theft, fraud in recruitment, and other violations of H-2A contracts." *Id.* And they "have used the same regulations to advance domestic workers' rights in corresponding employment." *Id.* "Legal Action's clients will benefit from the Final Rule in a variety of ways." *Id.* ¶ 4. But "attacks on the Final Rule" like this one have "disrupted" and "diverted" resources from Legal Action's efforts to advocate for their clients. *Id.* ¶ 6. Legal Action must expend substantial time and effort on tracking ongoing litigation like this case and "preparing for the legal landscape if the rule is struck down." *Id.* ¶ 7.

The UFW Foundation is a nonprofit that serves "farmworkers and low-income immigrants in California, Arizona, Washington, Oregon, . . . Michigan," and Georgia. Iñiguez-López Decl. ¶ 2 (Ex. 6). Its "membership includes H-2A workers and corresponding U.S. farm workers." *Id.* These "members could assert rights that would be strengthened by the" Final Rule challenged in this case. *Id.*; *see also id.* ¶ 5 (listing protections UFW Foundation's members would enjoy under the Final Rule). The UFW Foundation's organizers and staff "have heard countless stories of the abuses suffered by H-2A and corresponding U.S. farm workers by

6

employers." *Id.* ¶ 3. For example, "[w]orkers who the UFW Foundation work[s] with report that their employer prohibits them from meeting with key services providers like the UFW Foundation and having to covertly meet with medical, legal services, and other providers." *Id.* These workers also "report paying illegal recruitment fees and their employers confiscating passports and other travel documents and transporting them to states where they did not agree to work in." *Id.* The UFW Foundation also supports workers who "report widespread wage theft by H-2A employers against H-2A and corresponding U.S. farm workers." *Id.* And "[m]any [of these] farm workers report employer-provided transportation not having seat belts, those seat belts not being functional, or [the seat belts being provided] only for drivers." *Id.* The UFW Foundation "advocated in support of the [Final Rule] when it was originally proposed," including "submitting a public comment that featured the testimonies of approximately 100 farm workers" and signing onto Farmworker Justice's comments in support of the proposed rule. *Id.* ¶ 4. Moreover, Plaintiffs' requested relief would harm UFW Foundation in its organizational capacity by "limit[ing]" the UFW Foundation's "ability to engage workers who invite them to where they live and provide needed services." *Id.* ¶ 6.

## II.   ARGUMENT

### A.   *Proposed Intervenor-Defendants Meet the Standard for Permissive Intervention*

Fed. R. Civ. P. 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b)(1). Further, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *See* Fed. R. Civ. P. 24(b)(3).

7

      i. <u>This Motion is Timely</u>

There can be "no dispute that the [Proposed Intervenor-Defendants'] motion was timely; they filed their motion at the very outset of the suit, before any defendant ha[s] filed an answer." *Buck v. Gordon*, 959 F.3d 219, 223 n.4 (6th Cir. 2020). Indeed, Proposed Intervenor-Defendants file this Motion "at the outset of the case" in part to ensure that timeliness is unquestionably met. *SWANCC*, 101 F.3d at 509.

For completeness, Proposed Intervenor-Defendants meet every factor for timeliness of intervention. Courts in this circuit assess timeliness based on five factors:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the [Proposed Intervenor-Defendants] knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the [Proposed Intervenor-Defendants'] failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Stupak-Thrall v. Glickman*, 226 F.3d 467, 473 (6th Cir. 2000) (citation omitted).

*First*, "the suit has [not] progressed" beyond its initial stages. *Id.* "This factor weighs against intervention when movants request party status during the final stages of litigation." *United States v. Michigan*, 68 F.4th 1021, 1025 (6th Cir. 2023). Although "it's not always easy to tell" when a case is in its "final stages," *id.*, this motion to intervene comes before the Government Defendants have even answered the two Complaints.

*Second*, "the purpose for the intervention" factor weighs in favor of timeliness. The Sixth Circuit's "cases approach this factor in two somewhat inconsistent ways, either by: (1) peeking behind the timeliness curtain at the legitimacy of the intervenors' purported interest, or (2) analyzing whether the would-be intervenors acted promptly in light of their stated purposes." *Id.* at 1025 (cleaned up).

8

As to the legitimacy inquiry, Proposed Intervenor-Defendants seek intervention to help defend legal protections they fought for and that directly benefit them or their clients. *See infra* II.B.i.2. The Sixth Circuit has held that defensive intervention to protect a law that benefits the intervenor weighs in favor of intervention in the timeliness inquiry. *See Blount-Hill v. Zelman*, 636 F.3d 278, 285 (6th Cir. 2011) (proposed intervenor school sought intervention to help defend constitutionality of law that provided school with funding).

As to the promptness inquiry, Proposed Intervenor-Defendants have moved promptly since they learned of the lawsuit. Given the range of groups and individuals comprising Proposed Intervenor-Defendants, this Motion was compiled as quickly as feasible. In short, "the [Proposed Intervenor-Defendants] proceeded with haste from the time that they became aware" of the lawsuit. *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990).

*Third*, "the length of time preceding the application during which the [Proposed Intervenor-Defendants] knew or should have known of their interest in the case" is minimal. *Stupak-Thrall*, 226 F.3d at 473. Proposed Intervenor-Defendants learned of this lawsuit from news reports shortly after the Plaintiffs filed their Complaint. Since then, roughly six weeks have elapsed. Given the range of groups and individuals represented as Proposed Intervenor-Defendants, that time was crucial to settle on a strategy and prepare these papers, as well as to prepare a similar forthcoming intervention motion in another challenge to the Final Rule in North Carolina, and an amicus brief in the original challenge to the Final Rule in the Southern District of Georgia, *see* Mot. Leave File Amicus Curiae Br., *Kansas v. U.S. Dep't of Labor*, No. 2:24-cv-76-LGW-BWC, ECF No. 119 (Oct. 30, 2024). This is simply not a case in which a proposed intervenor has adopted a "'wait-and-see' approach," allowing litigation to develop before deciding to seek intervention. *See Cahoo v. SAS Inst., Inc.*, 71 F.4th 401, 413 (6th Cir. 2023).

*Fourth*, there will be no "prejudice to the original parties" from allowing Proposed Intervenor-Defendants to participate from this early stage. *Stupak-Thrall*, 226 F.3d at 473. Such prejudice may occur, for example, where a proposed intervenor's late-breaking motion would force the existing parties "to re-litigate key stages of [the] case." *Cahoo*, 71 F.4th at 413. But here, there is nothing to re-litigate.

*Fifth*, two "unusual circumstances" counsel in favor of timeliness here. *Stupak-Thrall*, 226 F.3d at 473. Initially, this case is the third challenge (of which Proposed Intervenor-Defendants are aware) to the Final Rule. Counsel for Proposed Intervenor-Defendants has been or will shortly seek to become involved in each of the earlier-filed cases, in the Southern District of Georgia (as attorney for *amici*), *see Kansas v. U.S. Dep't of Labor*, No. 2:24-cv-76-LGW-BWC, Dkt. No. 78 (July 17, 2024) (granting motion for pro hac vice appearance), and in the Eastern District of North Carolina (as attorney for Proposed Intervenor-Defendants). This has required substantial time in preparing filings in each of those cases — accounting for much of the de minimis time between the filing of this case and this Motion — and also means that Proposed Intervenor-Defendants are deeply familiar with the issues in this case. This is an "unusual" instance, where intervention would assist the Court in understanding the full context of a case by including parties and counsel engaged in other, related cases.

Moreover, the Proposed Intervenor-Defendants bring unique perspectives to this case. This Court has already granted intervention to four States, recognizing that only they "may assert" certain "arguments" relating to state sovereignty and the operation of the Final Rule on their state agencies. *See* ECF No. 14 at 3. Just as the original parties could not speak to the concerns faced by the Intervenor-Plaintiff States, no current party can speak to the operation of the H-2A program and the Final Regulation from the position of farmworkers and their

advocates. In this facial challenge to a federal regulation affecting workers across the country, the voices of at least some of those workers and their advocates should be heard.

### ii. Proposed Intervenor-Defendants' Defenses Share Common Questions of Law or Fact with the Main Action

Proposed Intervenor-Defendants have multiple "defense[s] that share[] with the main action . . . common question[s] of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In ruling on the Intervenor-Plaintiff States' motion to intervene, this Court noted that those Intervenors satisfied this requirement because their Complaint raised "several common questions of law, including whether the Final Rule exceeds agency authority and constitutes an arbitrary and capricious agency decision." ECF No. 14 at 3. The same logic applies to Proposed Intervenor-Defendants, simply on the other side of the "v." *See, e.g.*, *Buck*, 959 F.3d at 223–24 (intervenor-defendants who sought to defend legality of government action that benefited them raised "a common question of law or fact" and permissive intervention was warranted); *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 577 (6th Cir. 2018) (similar).

### iii. Proposed Intervenor-Defendants' Participation Will Not Unduly Delay or Prejudice Any Other Party

In no way will Proposed Intervenor-Defendants' participation cause undue delay or prejudice. Such concerns usually arise where allowing intervention would require slowing down or reopening briefing schedules or extending or enlarging discovery. *See, e.g.*, *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (denying permissive intervention where intervenors would need "prolonged discovery" and "court had already established a schedule for discovery and trial" (internal quotation marks omitted)). As explained above, Proposed Intervenor-Defendants have filed this motion at the outset, so there is nothing to relitigate. Nor would Proposed Intervenor-Defendants cause prejudice or delay by dragging out discovery. Indeed, discovery is exceedingly unlikely in this APA case, where "the district judge sits as an appellate

11

tribunal," confined (with rare exceptions unlikely to apply here) to the administrative record. *See Chamber of Com. of U.S. v. SEC*, 670 F. Supp. 3d 537, 550–51 (M.D. Tenn. 2023) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).

Nor would Proposed Intervenor-Defendants' participation unduly delay or prejudice existing parties by duplicating the Government Defendants' arguments. *See, e.g.*, *Kentucky v. EPA*, No. 3:23-cv-7, 2023 WL 2415219, at *3 (E.D. Ky. Mar. 8, 2023) (considering whether Proposed Intervenor-Defendants would bring "any unique argument they will contribute to the litigation" in deciding permissive intervention). Indeed, as evidenced by the Proposed Oppositions to the pending motions for preliminary relief attached to this Motion, *see* Ex. 7–8, Proposed Intervenor-Defendants intend to raise several arguments not included in the Government Defendants' opposition to the plaintiffs' motions, *see* Opp'n, ECF No. 34.

> B. *Alternatively, this Court Should Treat this Motion as a Standby or Conditional Motion for Intervention As-of-Right and Defer Consideration*

Federal Rule of Civil Procedure 24(a) provides:

> On [A] timely motion, the court must permit anyone to intervene who: . . . (2) [B] claims an interest relating to the property or transaction that is the subject of the action, and [C] is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless [D] existing parties adequately represent that interest.

*See* Fed. R. Civ. P. 24(a).

Should this Court agree that permissive intervention is warranted under Rule 24(b), it need not consider whether Proposed Intervenor-Defendants meet the Rule 24(a) standard for intervention as-of-right. But if this Court disagrees that Proposed Intervenor-Defendants meet the Rule 24(b) standard, Proposed Intervenor-Defendants request this Court treat this Motion as "a standby or conditional application for leave to intervene" as-of-right "and ask [this Court] to defer consideration of the question of adequacy of representation" under Fed. R. Civ. P. 24(a)(2)

12

until such time as the Government Defendants no longer adequately represent Proposed Intervenor-Defendants' interests. *See SWANCC*, 101 F.3d at 509.

      i.      <u>Proposed Intervenor-Defendants Meet the Timeliness, Interest, and Impairment Requirements for Intervention As-of-Right</u>

Of the four requirements for intervention as-of-right, the first three — timeliness, an interest, and impairment — are easily met.

      1.   *Timeliness*

This motion is timely for the reasons described *supra* at II.A.i. *See Blount-Hill*, 636 F.3d at 287 (timeliness inquiry identical for permissive intervention and intervention as-of-right).

      2.   *Proposed Intervenor-Defendants' Interests in this Litigation*

Proposed Intervenor-Defendants have "interest[s] relating to the . . . subject of the action" sufficient to justify intervention. Fed. R. Civ. P. 24(a)(2).

First, several of the Proposed Intervenor-Defendants are individual farmworkers in corresponding employment or on H-2A visas who are directly protected by the provisions of the Final Rule. *See generally* Millard Decl., Starks Decl., Shelly Decl. And the UFW Foundation's members are similarly situated. *See* Iñiguez-López Decl. ¶ 5. Obviously, these Proposed Intervenor-Defendants have an interest in preserving a legal rule granting them new protections. *See Feller v Brock*, 802 F.2d 722, 729–30 (4th Cir. 1986) (farmworkers whose wages were affected by DOL rulemaking regarding AEWR under predecessor to H-2A program had cognizable interest for intervention as-of-right).

Second, the remaining Proposed Intervenor-Defendants provide legal services to farmworkers on H-2A visas and in corresponding employment. *See* Johnson Decl. ¶ 4; Sullivan Decl. ¶ 5. The Final Rule has enormous implications for their day-to-day advocacy on behalf of their clients. Thus, these organizations have an "interest" for purposes of intervention.

13

Third, the UFW Foundation and Farmworker Justice, which signed onto comments in support of the Final Rule or otherwise advocated for the Final Rule, have an interest in defending the legality of the regulation, especially if the Government Defendants cease to defend the Final Rule. In this Circuit, "an organization involved in the process leading to the adoption of a challenged law" has a Rule 24(a)(2) "interest" in the legality of that provision if "the challenged law regulates the organization or its members." *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 781 (6th Cir. 2007). Initially, the farmworker advocacy groups are "directly regulated" by the Final Rule because the content of the Final Rule will directly shape their interactions with and advocacy on behalf of their farmworker clients. This is doubly true in the case of the UFW Foundation, which not only works with farmworkers, but whose membership also includes workers who will directly benefit from the rule. Iñiguez-López Decl. ¶ 2; *Granholm*, 501 F.3d at 782 ("[W]e have held that where a group is 'regulated by the new law, or, similarly, whose members are affected by the law, may likely have an ongoing legal interest in its enforcement after it is enacted.'" (citation omitted)). This interest is far more than "only a general ideological interest in seeing" the Final Rule upheld. *Id.*[2]

3. *The Outcome of this Litigation May Impair Proposed Intervenor-Defendants' Interests*

Finally, the outcome "of [this] action may as a practical matter impair or impede the [Proposed Intervenor-Defendants'] ability to protect [their] interests." Fed. R. Civ. P. 24(a). Both sets of Plaintiffs seek to vacate or enjoin the entirety of the Final Rule. *See* Barton Compl. at 37–

---

[2] Should this Court determine that only some of the Proposed Intervenor-Defendants have an "interest" within the meaning of Rule 24(a)(2), this Court should allow the other Proposed Intervenor-Defendants to permissively intervene. The only practical difference this would make would be to allow the remaining intervenors to appear on the combined papers with those Intervenor-Defendants this Court determines may intervene as-of-right. It would not materially impact the case.

38, ECF No. 1 (Prayer for Relief); Interv.-Pls.' Compl. at 29, ECF No. 15 (Prayer for Relief). That outcome would undoubtedly impair the interests of Proposed Intervenor-Defendants who are farmworkers — who would immediately lose the protections of the Final Rule — as well as those of the Proposed Intervenor-Defendants who provide services to and advocate for farmworkers on H-2A visas and in corresponding employment. And those Proposed Intervenor-Defendants who pushed for the Final Rule and whose advocacy and/or membership are directly regulated by the Final Rule plainly stand to lose if either set of Plaintiffs succeeds here.

  ii. <u>Pursuant to *SWANCC*, this Court Should Defer Consideration of the Alternative Motion to Intervene As-of-Right Until the Government Defendants' Representation of Proposed Intervenor-Defendants' Interests Is Plainly Inadequate</u>

Where a proposed intervenor needs to ensure their motion to intervene is timely, but recognizes that at the inception of the case they may not be able successfully to demonstrate that the present parties' representation of their interests is inadequate, that party may file a conditional or standby motion to intervene. The Seventh Circuit blessed this approach in *SWANCC*. That case involved a challenge to a federal agency's denial of a Clean Water Act permit. 101 F.3d at 504. A citizens' group moved to intervene to defend the agency's decision. *Id*. The Seventh Circuit held that the citizens' group failed to meet the standard for intervention as-of-right under Fed. R. Civ. P. 24(a) because the agency — "*as of now*" — adequately represented the groups' interests in defeating the challenge to the permit denial. *Id.* at 508 (emphasis in original).

But the court was also "sympathetic to the aspiring intervenors' concern that at some future point in this litigation the government's representation of their interest may turn inadequate yet it would be too late to do anything about it." *Id.* Thus, the court set out the following solution:

15

> The proper way to handle such an eventuality is for the would-be intervenor, when as here no present inadequacy of representation can be shown, to file at the outset of the case a standby or conditional application for leave to intervene and ask the district court to defer consideration of the question of adequacy of representation until the applicant is prepared to demonstrate inadequacy. This procedure, to which we find no objection in the federal rules or elsewhere, would not expose the applicant for intervention to charges of foot-dragging that doom as belated the usual post-judgment application to intervene.

*Id.* at 509; *see also* Order, *Miller v. Vilsack*, No. 4:21-cv-595 (N.D. Tex. May 2, 2022), ECF No. 198 (granting conditional motion to intervene); *Driftless Area Land Conservancy v. Huebsch*, No. 19-cv-1007-WME, 2020 WL 779296, at *4 (W.D. Wis. Feb. 18, 2020) (recognizing possibility of a conditional motion to intervene under *SWANCC*), *rev'd on other grounds*, 969 F.3d 742 (7th Cir. 2020); *Baude v. Heath*, No. 1:05-cv-735-JDT-TAB, 2005 WL 4880626, at *3 (S.D. Ind. Aug. 29, 2005) (similar); *Hoosier Env't Council, Inc. v. U.S. Army Corps of Eng'rs*, No. IP 98-0606-CM/S, 2000 WL 1428664, at *5 (S.D. Ind. May 4, 2000) (similar).

Proposed Intervenor-Defendants are in a similar posture. They presently share the same objective as the Government Defendants in defending the Final Rule. And at this extremely early stage in this litigation, it is not clear whether the Government Defendants' interests or litigation strategy will later diverge from Proposed Intervenor-Defendants', such that "the government's representation of [the intervenors'] interest[s] may turn inadequate yet it [may] be too late to do anything about it." *SWANCC,* 101 F.3d at 508 . For example, the next Presidential administration may abandon its defense of the rule. *See Feller*, 802 F.2d at 730 (holding district court abused discretion in denying intervention on adequacy grounds where DOL stated "that on the merits, it agrees with the growers" in challenge to AEWR regulations under predecessor to H-2A program); *cf. Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2288 (2024) (Gorsuch, J., concurring) (noting concerns of "regulatory whiplash" when presidential administrations reverse course on their predecessor's regulatory policies). Or, the Government defendants may elect

16

"tactical choice[s]" that result in the Final Rule being inadequately defended. *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (state agency's defense of state law held inadequate where agency "declined to offer" evidence in support of the challenged law and "declined to seek a stay" of an injunction against the law).

Proposed Intervenor-Defendants thus request, pursuant to *SWANCC*, that should this Court deny permissive intervention, it defer consideration on the motion for intervention as-of-right until future developments in this lawsuit demonstrate that the Government defendants do not adequately represent their interests.

### III.    CONCLUSION

For the foregoing reasons, Proposed Intervenor-Defendants request that this Court grant them permissive intervention as defendants in this action; or, if permissive intervention is unwarranted, treat their motion to intervene as a conditional or standby application for intervention as of right pursuant to *SWANCC* and allow them to participate as *amici* until such time as the Government Defendants plainly do not adequately represent the Proposed Intervenor-Defendants' interests.

Respectfully submitted this 4th day of November, 2024.

/s/ *Nathan Leys*
Nathan Leys (CT 442014)
(*pro hac vice* motion forthcoming)
FarmSTAND
712 H St. NE, Suite 2534
Washington, D.C. 20002
Phone: (202) 630-3095
Fax: (978) 845-2282
E-mail: nathan@farmstand.org

/s/ *Daniel J. Canon*
Daniel J. Canon (KY 92048)
Saeed & Little, LLP
8777 Purdue Rd., Ste. 225
Indianapolis, IN 46268
dan@sllawfirm.com
(317) 721-9214

**Attorneys for Proposed Intervenor-Defendants**