# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| RICHARD BARTON, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR, *et al.*,<br><br>*Defendants*. | Civil Action No. 5:24-cv-00249<br><br>**DECLARATION OF SHEILA SULLIVAN IN SUPPORT OF INTERVENTION** |

I, Sheila Sullivan, declare that:

1. I am an attorney and the Assistant Director of Litigation and Strategic Advocacy at Legal Action of Wisconsin ("Legal Action"). I have worked at Legal Action for almost two decades in various capacities—first as a staff attorney and then as a director of various firm-wide projects. I have been Assistant Director of Litigation and Strategic Advocacy for almost two years. My job includes articulating and implementing firm-wide strategic advocacy and litigation goals. I also co-counsel, coordinate, and advise on complex litigation, lead litigation teams, and evaluate alternative forums for solving issues before litigation.

2. Legal Action is the largest non-profit law firm in Wisconsin and provides free legal aid to thousands of low-income people each year in the 39 southern counties of Wisconsin. In addition, Legal Action operates several statewide projects, including projects serving crime victims, victims of sex and labor trafficking, and farmworkers. Through our statewide Farmworker Project, Legal Action's farmworker advocates ensure that agricultural workers, including workers with H-2A visas and those in corresponding employment, receive the wages they have earned, live and work in a safe environment, are recruited lawfully and fairly, and have access to the public benefits to which they are entitled.

3. Wisconsin's agricultural industry has a total production value of $16.7[1] billion—the 10th highest total production value in the U.S. With over 58,000 farms,[2] Wisconsin agricultural employers require a large labor force. To fulfill employer needs, many agricultural workers migrate to Wisconsin. Others work seasonally. Although Wisconsin employers were slow to begin hiring H-2A workers, the H-2A visa program has expanded rapidly. As the number of approved H-2A positions in Wisconsin has increased from 317 positions in 2008 to around 2,818 positions in 2023, the Farmworker Project has received hundreds of questions and taken on many cases for workers with H-2A visas. During that time, we have repeatedly used the existing H-2A regulations as a core advocacy tool. We have represented H-2A workers in cases of wage theft, fraud in recruitment, and other violations of H-2A contracts and assisted H-2A worker survivors of labor trafficking. We have used the same regulations to advance domestic workers' rights in corresponding employment by providing advice. We have also represented US workers in negotiations when they did not receive the wages, meals, housing, or travel reimbursements received by their H-2A visa counterparts.

4. Legal Action's clients will benefit from the Final Rule in a variety of ways. The new H-2A regulations create baseline standards that protect all Legal Action's farmworker clients and create opportunities for improved working conditions. For example, domestic worker clients are increasingly aware of the higher AEWR wage rates established by 20 C.F.R. §§ 655.120(a), 655.122(l) and of the opportunity to apply for higher-earning jobs during the recruitment period under § 655.121(g). Given the lower Wisconsin minimum wage, the higher AEWR provides a positive incentive to all employers to offer better pay to all workers to recruit and maintain an effective agricultural workforce. H-2A visa worker

---

*See* Census of Agriculture Highlights Wisconsin's Strengths, DATCP, February 13, 2024. https://datcp.wi.gov/Pages/News_Media/CensusofAgricultureHighlightsWisconsin%E2%80%99sStrengths.aspx#:~:text=The%20state%20of%20Wisconsin%20ranked,family%20farms%2C%22%20said%20Romanski.

[2] *See* Census of Agriculture Highlights Wisconsin's Strengths, DATCP, February 13, 2024. https://datcp.wi.gov/Pages/News_Media/CensusofAgricultureHighlightsWisconsin%E2%80%99sStrengths.aspx#:~:text=The%20state%20of%20Wisconsin%20ranked,family%20farms%2C%22%20said%20Romanski.

clients, some of whom have faced illegal recruitment fees prohibited by 20 C.F.R. § 655.122(p) and retaliation, such as blacklisting forbidden by 20 C.F.R. § 655.135(h), also gain protection under the new Final Rule. Because employers control their employment, immigration status, housing, transportation, meals, and income, many of Legal Action's H-2A visa worker clients are afraid to raise concerns or even ask questions regarding unsafe and illegal working conditions. The criteria for cause set forth in § 655.122(n) help protect workers from retaliatory firing under false pretenses. The Final Rule will thus benefit our clients by providing clearer rules for employers and farm labor contractors, greater protections for workers, and partly correcting the power imbalance that has placed H-2A workers at significant risk of being trafficked.

5. The core activities of Legal Action's Farmworker Project include representing agricultural workers who have been deprived of their legal rights, and conducting outreach and providing advice to workers at various sites throughout the state. We also educate community partners who serve these vulnerable workers through a variety of presentations and written materials. As part of these core functions, Legal Action participated in webinars, phone calls, and other methods of self-education to learn about the Final Rule as it was being developed. Once the Final Rule was published, LAW began educating front line staff, community partners, and potential clients about the Rule and its potential impact on farmworker communities in Wisconsin.

6. This work has been disrupted, and valuable resources diverted, by coordinated attacks on the Final Rule through numerous federal court cases, including this one. These lawsuits require us to investigate what aspects of the Final Rule are currently being implemented in Wisconsin and predict which aspects may be implemented in future growing seasons. In anticipation of the implementation of the Final Rule, for example, some Wisconsin employers developed "for cause" language regarding employment termination and recruited H-2A workers for the current working season[3] under Final Rule compliant job orders. Other employers made few or no changes to their standard job orders. Wisconsin

---

[3] This season ends in November and December.

farmworkers are thus currently working under job orders which are not unform with each other or with the Final Rule. That lack of uniformity is likely to persist at the state level. It will certainly persist for H-2A visa clients—and those in corresponding employment--who are being recruited to work in muti-state crews.

7. Legal Action and the Farmwork Project are directly injured by the created by the wave of lawsuits seeking to delay implementation of some or all the Final Rule and eventually obliterate the Rule entirely. We must track what remains of the Final Rule after each stage in each law suit, and develop new educational and outreach materials and advise clients based on the legally amended rule. At the same time, Farmworker advocates must begin preparing for the legal landscape if the rule is struck down by ascertaining what rules will apply after revision and preparing alternate materials, either in anticipation of it being struck down or in a rushed manner if it is. This diversion of resources has already disrupted the core work of the Farmworker Project and will continue to do so for the next year at least, forcing the Project to revise long-planned priorities, and deploy scarce resources in unexpected and unusual ways.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 25, 2024.

*/s/ Sheila Sullivan*

Sheila Sullivan